Richard S. Taffet
richard.taffet@bingham.com
Diane C. Hertz
diane.hertz@bingham.com
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, New York  10017
Tel:  212.705.7700

*Attorneys for Plaintiff L&L Wings, Inc.*

## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

L&L WINGS, INC.,

               Plaintiff,

          v.

SHEPARD MORROW,
SUPER WINGS, LLC, and
BEACH MART, INC.,

               Defendants.

Civil Action No.: 14-CV-0809-GBD

**AMENDED COMPLAINT
AND
JURY DEMAND**

Plaintiff L&L Wings, Inc. ("L&L" or "Plaintiff"), through its undersigned counsel, brings this Amended Complaint asserting claims and seeking Declaratory Judgments against Defendants Shepard Morrow ("Morrow"), Super Wings, LLC ("Super Wings") and Beach Mart, Inc. ("Beach Mart"), and alleges on knowledge as to itself and otherwise on information and belief, as follows:

## <u>NATURE OF THE ACTION</u>

1.     This is an action arising from the unlawful conduct by Morrow, Super Wings and Beach Mart to claim rights in, and that has created an actual controversy over, the ownership of the trademark WINGS for use in connection with retail stores, beachwear and

other beach related goods, of which L&L is the sole and exclusive owner. Morrow, Super Wings and Beach Mart have done so willfully, intentionally and in concert, to diminish L&L's rights in the WINGS name, and to assist Beach Mart in its improper assertion of rights in and to the WINGS name, as well as to assist Beach Mart in its efforts to avoid remedies sought by L&L against Beach Mart for trademark infringement and breach of a license agreement in a case pending, but now stayed, in the United States District Court for the Eastern District of North Carolina, entitled *Beach Mart, Inc. v. L&L Wings, Inc.*, 2:11-CV-44-F (the "North Carolina Action").

2.    Morrow, Super Wings and Beach Mart have willfully, intentionally and in concert sought to diminish L&L's rights in and to the WINGS trademark by entering into two Trademark Assignment Agreements, whereby Morrow has twice purported to assign, first to Super Wings and most recently to Beach Mart: (a) rights to the WINGS trademark that he, Super Wings and Beach Mart know or should know Morrow does not own; (b) a 1993 agreement between him and L&L (the "Morrow Agreement") that was null and void from its inception, or is now terminated, or if still in effect has been breached by Morrow by his attempted assignments and his improper notice to L&L thereunder; and (c) purported causes of action against L&L under the Morrow Agreement that Morrow, Super Wings and Beach Mart know or should know do not exist. Such conduct has created an actual controversy between each of Morrow, Super Wings and Beach Mart, on the one hand, and L&L, on the other, regarding the ownership of rights in and to the WINGS trademark, and specifically with respect to L&L's sole and exclusive right in and to the WINGS trademark for use in connection with retail stores, beachwear and other beach related goods.

3.    As a result of such conduct by Morrow, Super Wings and Beach Mart, L&L brings this action for: (a) a declaratory judgment that Morrow owned no rights in or to the WINGS name and therefore, the Morrow Agreement was null and void from its inception; (b) a declaratory judgment that the alleged assignments by Morrow to Super Wings and subsequently to Beach Mart of the Morrow Agreement were null and void because Morrow

2

possessed no rights to assign, including but not limited to because the Morrow Agreement was terminated in 1994; (c) a declaratory judgment that Super Wings and subsequently Beach Mart obtained no rights, title and/or interest in the WINGS trademark as a result of the alleged assignments of the Morrow Agreement, including but not limited to because Morrow at no time had any rights to assign, and alternatively because any rights to the WINGS name that Morrow may have had were abandoned and lost long prior to either of the purported assignments to Super Wings and Beach Mart; (d) a declaratory judgment that L&L is the owner of all trademark rights in the name WINGS, under the Lanham Act, 15 U.S.C. §§ 1051 et seq., and common law, in connection with retail apparel stores, retail clothing stores, and retail discount store services in the field of beachwear clothing; (e) in the alternative, Morrow breached the Morrow Agreement, in the event the Court finds that the Morrow Agreement was still in effect at the time of the alleged assignments; (f) in the alternative, Morrow breached the covenant of good faith and fair dealing, in the event the Court finds that the Morrow Agreement was still in effect at the time of the alleged assignments and at the time Morrow purportedly gave Notice to L&L thereunder; (g) in the alternative, tortious interference with contract against Super Wings and Beach Mart, in the event the Court finds that the Morrow Agreement was still in effect at the time of the alleged assignments; (h) in the alternative, civil conspiracy to tortiously interfere with contract against Super Wings and Beach Mart, in the event the Court finds that the Morrow Agreement was still in effect at the time of the alleged assignments; (i) in the alternative, a declaratory judgment that L&L is entitled to have assigned to it Morrow's rights, title and interests in the WINGS trademark under the Morrow Agreement, to the extent Morrow has any such rights and to the extent the Court finds that the Morrow Agreement was still in effect at the time of the alleged assignments; and (j) in the alternative, a declaratory judgment that L&L is entitled to have assigned to it Super Wings' or Beach Mart's rights, title and interests respectively in the WINGS trademark, to the extent Super Wings or Beach Mart have and/or acquired from Morrow any such rights.  L&L seeks injunctive relief enjoining Morrow, Super Wings and

A/76006065.1

Beach Mart from asserting or enforcing any rights in the WINGS name, either alone or in concert, together with monetary damages.

## PARTIES

4.    L&L is a corporation duly organized under the laws of the State of South Carolina, and maintains its principal place of business at 666 Broadway, New York, New York 10012.

5.    Morrow is a resident of the State of New Jersey.  At the time he executed the Morrow Agreement, which is the subject matter of this Action, Morrow resided in New York, New York.

6.    Super Wings is a North Carolina limited liability company with its principal place of business in Nags Head, North Carolina.  As a purported assignee of the Morrow Agreement, Super Wings stands or stood in the shoes of Morrow in connection with the Morrow Agreement.

7.    Beach Mart is a North Carolina corporation with its principal place of business in Nags Head, North Carolina.  As a purported assignee of the Morrow Agreement, Beach Mart stands in the shoes of Morrow in connection with the Morrow Agreement.

## JURISDICTION AND VENUE

8.    This Court has original jurisdiction over these claims pursuant to 28 U.S.C. §§ 1332(a), pursuant to 28 U.S.C. § 2201 in a case of actual controversy, and pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

9.    Venue is proper in this District under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

A.    L&L's Ownership Of The WINGS Trademark

10.    L&L was established in 1978, and is well-known as a retailer of beach related apparel, beach toys, souvenirs and other related items.

4

A/76006065.1

11.     L&L owns and operates 31 retail stores under the WINGS brand in six states, including North Carolina, South Carolina, Florida, Massachusetts, Texas and California.

12.     Since February 1, 1978, L&L has continuously offered for sale and has sold products, and has provided services, under the trademark WINGS.

13.     L&L has extensively and consistently advertised, marketed and promoted the WINGS trademark since 1978 in interstate commerce.

14.     L&L is the owner of all right, title and interest in and to the WINGS trademark as used in connection with the operation of retail apparel stores, retail clothing stores, retail discount store services in the field of beachwear clothing, and the retail sale of beach related apparel, beach toys, souvenirs and other related items.

15.     L&L has achieved significant consumer recognition as the source of beachwear clothing, beach related apparel, beach toys, souvenirs and related items sold at retail under the WINGS name.

16.     L&L is the owner of the following valid and subsisting federal trademark registrations on the Principal Register of the United States Patent and Trademark Office for the WINGS name: (a) Reg. No. 3458144, issued July 1, 2008, for WINGS used in connection with retail apparel stores in the field of beachwear clothing; (b) Reg. No. 4193881, issued August 12, 2012, for WINGS used in connection with beach towels, men's, women's and children's clothing, beach shoes, socks, head wear, accessories and retail store services featuring beach related equipment; and (c) Reg. No. 4205040, issued September 11, 2012, for WINGS (stylized) used in connection with beach towels, men's, women's and children's clothing, beach shoes, socks, head wear, accessories and retail store services featuring beach related equipment.

B.     The Morrow Agreement

17.     In 1992, Morrow acquired five federal trademark registrations for the name WINGS, all for use in connection with men's and boy's clothing.     These trademark registrations were assigned by their original owner, Piedmont Industries, a clothing

5

manufacturer, to Hampton Industries as part of a bankruptcy.   As part of that same bankruptcy, Hampton Industries assigned the registrations to Morrow on May 26, 1992.

      18.     Morrow never made use in commerce of the WINGS name at any time.

      19.     None of Morrow, Piedmont Industries or Hampton Industries has ever used the WINGS name in connection with retail stores, beachwear or beach related products.

      20.     In April 1993, L&L and Morrow, both resident in New York, New York at the time, entered into the Morrow Agreement.   That Agreement is governed by New York law. Morrow signed the Agreement in New York, where he lived until 2002.

      21.     The Morrow Agreement purportedly granted to L&L a license to use the WINGS name in connection with Morrow's five trademark registrations.   Based on Morrow's representation to L&L that he was the owner of those five trademark registrations, L&L entered into the Morrow Agreement.

      22.     Morrow failed to disclose to L&L, prior to L&L's execution of the Morrow Agreement, that he had never used the WINGS name in commerce, and had never used the designation in connection with retail stores, beachwear or beach related products.   At no time since executing the Morrow Agreement has Morrow used the WINGS name in commerce, including in connection with retail stores, beachwear or beach related products.

      23.     In the Morrow Agreement, Morrow expressly disclaimed making any representation concerning the WINGS trademark, except to the extent of his purported ownership of certain U.S. trademark registrations and his claimed exclusive right to use the WINGS name in connection with the goods specified in those registrations, none of which related to retail stores, beachwear or beach related goods.   At the time of the Morrow Agreement, due to Morrow's failure to use the WINGS name in any manner, the identified trademark registrations were abandoned, and all have been cancelled by the U.S. Patent and Trademark Office as U.S. trademark registrations.

      24.     As a result of the foregoing, at the time the parties entered into the Morrow Agreement, Morrow had abandoned all rights that may have existed in connection with the

A/76006065.1

WINGS name as used by Morrow's assignors. Morrow thus had no rights to convey and did not convey any rights under the Morrow Agreement to L&L, which was null and void from its inception, and without legal effect.

25. In the alternative, to the extent that the Morrow Agreement was not void and of no effect *ab initio*, Morrow terminated the Morrow Agreement in 1994.

26. Paragraph 8 of the Morrow Agreement, entitled "Termination," provides as follows:

> Licensor may terminate this Agreement at any time in the event that Licensee fails to make a Royalty Payment. In such event, Licensor shall deliver written notice of such non-payment to Licensee and allow Licensee fifteen (15) days after the delivery of such notice in which to remit the Royalty Payment (the "Cure Period"). If the Royalty Payment is not made during the Cure Period, then this Agreement shall terminate fifteen (15) days after the date of such notice.

27. L&L ceased making Royalty Payments under the Morrow Agreement. Thereafter, Morrow exercised his right to terminate that Agreement by sending written notice, through his counsel, of such non-payment to L&L, through its counsel, on June 10, 1994. Morrow's counsel again communicated with L&L on August 2, 1994, more than 15 days after the first notice, stating again that no payment had been made. L&L made no further Royalty Payments to Morrow.

28. Since the termination of the Morrow Agreement in 1994, Morrow has not used or licensed any third party to use the WINGS name in commerce, and has had no communication with or taken any other actions directed to L&L regarding any purported rights he might have in the WINGS name, prior to the assignment of his alleged rights to Super Wings, described hereinafter as the "SW Assignment Agreement."

C.   The Purported Assignment Of Rights Under The Morrow Agreement To Super Wings

29. Beach Mart's principal, Israel Golasa, formed a new entity, Super Wings, on December 30, 2013, and Super Wings entered a purported Trademark Assignment Agreement with Morrow dated December 31, 2013 (the "SW Assignment Agreement"). Super Wings

7

A/76006065.1

was formed for the purpose of advancing the efforts of Beach Mart to undermine the rights of L&L in and to the WINGS name and to further Beach Mart's unlawful use of the WINGS name.

30.     By the SW Assignment Agreement, Morrow purported to assign to Super Wings, *inter alia*, "(i) all of Morrow's right, title and interest in and to the Trademark (defined therein as "WINGS"), together with the goodwill symbolized by the Trademark; (ii) all of Morrow's rights and interest under the [Morrow Agreement] . . . .; and (iii) all of Morrow's rights and interest in any causes of action, claims or demands . . . arising from" any infringement of the WINGS mark and any breaches of the Morrow Agreement with L&L.

31.     On February 10, 2014, L&L filed its original Complaint in this action against Morrow and Super Wings seeking declarations, *inter alia*, that Morrow never did and currently does not have any rights in the WINGS name, that Super Wings obtained no such rights, and that L&L is the sole and exclusive owner of the trademark WINGS for use in connection with retail stores, beachwear and beach related products.  L&L's original Complaint also asserted, in the alternative, a breach of contract claim against Morrow, and a tortious interference with contract claim against Super Wings, in the event that the Morrow Agreement was ever in effect or in effect at the time of that assignment.

32.     As a result of the SW Assignment Agreement, and Morrow's and Super Wings' assertion of rights in the WINGS name in connection therewith, and the actual controversy as detailed below between L&L, Morrow and Super Wings that was created as a result, L&L expended and continues to expend significant resources and money to address and oppose these assertions of rights, including in the North Carolina Action notwithstanding that Super Wings is not and never was a party to that Action.

D.     The Purported Assignment Of Rights Under The Morrow Agreement To Beach Mart

33.     By Order of this Court dated March 6, 2014, defendants were required to file their responses to L&L's Complaint on or before April 18, 2014.  On April 18, 2014 at approximately 4:30 pm, Good Friday, counsel for L&L received a hand-delivered letter from

counsel for Morrow and Super Wings enclosing a letter from Morrow's North Carolina counsel purporting to give notice that Morrow "will assign" all of his rights and duties in the Morrow Agreement to Beach Mart (the "Notice"). The Notice did not indicate when Morrow intended to assign his alleged rights and duties in the Morrow Agreement, and further did not explain how he would assign such alleged rights and duties in light of the SW Assignment Agreement.

34.     At 5:30 pm on April 18, 2014, a copy of the Notice was hand-delivered by counsel for Morrow and Super Wings to L&L at its offices located at 666 Broadway, New York, N.Y. As April 18, 2014 was Good Friday and the Notice was hand-delivered after business hours, L&L did not become aware of the Notice until Monday, April 21, 2014.

35.     During the evening hours of April 18, 2014, defendants Morrow and Super Wings each filed motions to dismiss L&L's original Complaint, accompanied by certain declarations and exhibits. By those filings, L&L learned for the first time that Morrow and Super Wings had executed a Rescission Agreement, dated April 17, 2014 (but signed by Morrow on April 18, 2014) (the "Rescission Agreement"), rescinding the SW Assignment Agreement, and further that Morrow had executed an Assignment Agreement with Beach Mart (the "BM Assignment Agreement") dated April 18, 2014, which Israel Golasa had signed on behalf of Beach Mart at 3:05 pm that same day, prior to the delivery of the Notice to either L&L or its counsel.

36.     The BM Assignment Agreement was identical to the SW Assignment Agreement in all material respects, except that Morrow received a larger payment for the assignment from Beach Mart ($65,000 versus $60,000), and by that agreement, Morrow purported to assign his alleged rights and interest in the WINGS name, including all alleged rights and interest under the Morrow Agreement, as well as all claims against L&L arising therefrom, to Beach Mart.

37.     On April 21, 2014, counsel for L&L sent a letter via electronic and registered mail to both Morrow's New York and North Carolina counsel informing them of L&L's

9

objection to the BM Assignment Agreement and to the Notice as breaches of paragraphs 7 and 9 of the Morrow Agreement, to the extent the Morrow Agreement was still in effect, and demanding that pursuant to paragraph 7, Morrow assign to L&L his rights under the Morrow Agreement, to the extent he owns any such rights, for the "Royalty" fee as defined therein.

E.    Breaches By Morrow Of The Morrow Agreement As A Result Of Both The SW
      Assignment Agreement And The BM Assignment Agreement

       38.    Paragraph 7 of the Morrow Agreement provides in relevant part that if ten years after the execution date of the Morrow Agreement Morrow is not using the WINGS mark and he has not licensed any party other than L&L to use the WINGS mark, then Morrow shall assign all right, title and interest in and to the WINGS mark to L&L upon full payment of and in consideration of the Royalty, as defined in the Morrow Agreement.  From the date ten years after the execution of the Morrow Agreement to the present, Morrow has not used the WINGS mark and has not extended any licenses to any other party.

       39.    Morrow, nonetheless, has failed to make the assignment required by paragraph 7 to L&L, which stands ready, willing and able to make full payment of the Royalty upon such assignment, in the event the Morrow Agreement is found valid and in existence as of the time of the SW Assignment Agreement and the BM Assignment Agreement.

       40.    Paragraph 9 of the Morrow Agreement provides in relevant part that Morrow may assign all or any part of his rights under that Agreement only upon notice to L&L. Paragraph 9 further provides that subject to the foregoing notice requirement, all rights, duties and obligations of Morrow shall bind and inure to any successor or assign.

       41.    Paragraph 10 of the Morrow Agreement provides in relevant part that any notice or consent required to be given to L&L thereunder, such as the notice required by paragraph 9 regarding assignment of that agreement, is to be made in writing and either personally delivered or sent by registered or certified first class mail to Bennett D. Krasner, Esq. as counsel for L&L, at L&L's offices.

A/76006065.1

42.     Morrow's attempted and purported assignments to Super Wings and Beach Mart were not upon notice to L&L, and any notice provided did not afford L&L any reasonable ability to obtain the benefits of the Morrow Agreement, specifically but without limitation in connection with L&L's rights under paragraph 7 of the Morrow Agreement, assuming that the Morrow Agreement had any force and effect from the outset and continued to have any force and effect up to and including the time of the purported assignments to Super Wings and Beach Mart.

F.     The Actual Controversy Between Plaintiff L&L And Defendants

43.     By entering into the SW Assignment Agreement, Morrow evidenced a claim to rights in and to the WINGS trademark, in that he purported to own rights in the WINGS trademark and further purported to assign those rights, as well as any claims against L&L in connection with the WINGS name, to Super Wings.  Such a claim of rights by Morrow with respect to the WINGS trademark is in direct conflict with the sole and exclusive rights of L&L in and to the WINGS trademark for use in connection with, *inter alia*, retail stores, beachwear and beach related goods, and created an actual controversy between Morrow and L&L with regard to rights in and to the WINGS trademark, including with respect to whether Morrow had any right to assign rights to the WINGS mark.

44.     By entering into the SW Assignment Agreement, Super Wings became the purported assignee of Morrow's rights under the Morrow Agreement as well as Morrow's claims against L&L arising out of any violation of that agreement.  Through counsel, Super Wings has represented in the North Carolina Action, to which it is not a party, that it was ready and willing to be joined in that Action as a party to assert its alleged rights in the WINGS name, acquired from Morrow, against L&L.  Super Wings' actions in this regard were in direct conflict with respect to the sole and exclusive rights of L&L in and to the WINGS trademark for use in connection with, *inter alia*, retail stores, beachwear and beach related goods, and created an actual controversy between it and L&L with regard to rights in

A/76006065.1

and to the WINGS trademark, including with respect to whether Super Wings had any right or ability to take assignment under the SW Assignment Agreement.

45.     By entering into the BM Assignment Agreement, Morrow evidenced a claim to rights in and to the WINGS trademark, in that he purports to own rights in the WINGS trademark and further purports to assign those rights, as well as any claims against L&L in connection with the WINGS name, to Beach Mart.  Such a claim of rights by Morrow with respect to the WINGS trademark is in direct conflict with the sole and exclusive rights of L&L in and to the WINGS trademark for use in connection with, *inter alia*, retail stores, beachwear and beach related goods, and created an actual controversy between Morrow and L&L with regard to rights in and to the WINGS trademark, including with respect to whether Morrow had any right to assign rights to the WINGS mark.

46.     By entering into the BM Assignment Agreement, Beach Mart has now purportedly taken assignment of Morrow's alleged rights in the WINGS name pursuant to the Morrow Agreement.  As Beach Mart is currently asserting claims against L&L regarding the parties' rights in the WINGS name, these actions give rise to an actual controversy between L&L and Beach Mart.  Beach Mart's actions in this regard were in direct conflict with respect to the sole and exclusive rights of L&L in and to the WINGS trademark for use in connection with, *inter alia*, retail stores, beachwear and beach related goods, and created an actual controversy between it and L&L with regard to rights in and to the WINGS trademark, including with respect to whether Beach Mart had any right or ability to take assignment under the BM Assignment Agreement.

G.     Defendants' Intentional, Willful And Concerted Actions To Interfere With L&L's Rights In And To The WINGS Trademark

47.     By their actions, defendants have acted intentionally, willfully and in concert to unlawfully diminish and compromise L&L's sole and exclusive rights in and to the WINGS trademark for use in connection with, *inter alia*, retail stores, beachwear and beach related goods.

12

A/76006065.1

48.     Super Wings and Beach Mart knowingly entered into an agreement to induce Morrow to commit several breaches of the Morrow Agreement by forming Super Wings, and entering into the SW Assignment Agreement and the BM Assignment Agreement with Morrow.  These overt acts, in furtherance of their plan, were undertaken to benefit Beach Mart and to advance its unauthorized and unlawful use of the WINGS trademark.  Super Wings engaged in such conduct at the direction of Beach Mart's principal, Israel Golasa, who is also Super Wings' sole member.  Morrow would not have breached the Morrow Agreement if it had not been for Super Wings' and Beach Mart's conduct in procuring those breaches.

49.     Morrow has engaged in such intentional, willful and concerted actions for his personal financial gain.  He has done so by purportedly conveying rights with respect to the WINGS trademark to Super Wings and Beach Mart that he knew, or should have known, he did not possess, and by further making himself a part of the artificial scheme of Super Wings and Beach Mart to improperly deprive L&L of its rights in and to the WINGS trademark, or at a minimum, to diminish such rights of L&L as evidenced by the SW Assignment Agreement, the Rescission Agreement, and the BM Assignment Agreement.

## Count I
## DECLARATORY RELIEF
### Declaration That The Morrow Agreement Was Void And
### Without Legal Effect From Its Inception
### (As Against Morrow)

50.     Plaintiff realleges and incorporates the allegations of paragraphs 1-49 above, as if set forth fully herein.

51.     By entering into the SW Assignment Agreement and the BM Assignment Agreement, Morrow asserted rights in and to the WINGS trademark based on the Morrow Agreement, in that he purported to own rights in the WINGS trademark and further purported to have the ability to assign those rights under the Morrow Agreement, as well as any claims against L&L in connection with the WINGS name, to Super Wings and subsequently to Beach Mart.

13

A/76006065.1

52.     As a result, an actual controversy exists between L&L and Morrow regarding the extent of any rights Morrow may have ever had in the WINGS name, and regarding whether the Morrow Agreement ever had any validity or effect.

53.     To clarify and settle the foregoing adverse legal interests between L&L and Morrow, specifically with respect to whether Morrow had any rights in the WINGS trademark at the time of the execution of the Morrow Agreement, L&L seeks a declaration that Morrow possessed no rights in the WINGS name at the time of the execution of the Morrow Agreement and that the Morrow Agreement was null and void from its inception in April 1993, rendering it and any rights thereunder incapable of assignment.

## Count II
## DECLARATORY RELIEF
### Declaration That The Morrow Agreement Terminated In 1994
### (As Against Morrow)

54.     Plaintiff realleges and incorporates the allegations of paragraphs 1-53 above, as if set forth fully herein.

55.     By entering into the SW Assignment Agreement and the BM Assignment Agreement, Morrow asserted rights in and to the WINGS trademark based on the Morrow Agreement, in that he purported to own rights in the WINGS trademark and further purported to have the ability to assign those rights under the Morrow Agreement, as well as any claims against L&L in connection with the WINGS name, to Super Wings and subsequently to Beach Mart.

56.     As a result, an actual controversy exists between L&L and Morrow as to whether the Morrow Agreement and any rights purportedly arising thereunder continued to exist as of the time of the SW Assignment Agreement and the BM Assignment Agreement, or whether the Morrow Agreement and all rights, if any, arising thereunder, were terminated by Morrow in 1994, and whether Super Wings or Beach Mart could acquire any rights under the Morrow Agreement.

14

57. To clarify and settle the foregoing adverse legal interests between L&L and Morrow, specifically with respect to the continued existence of the Morrow Agreement and Morrow's rights, if any, thereunder at the time of the SW Assignment Agreement and the BM Assignment Agreement, L&L seeks a declaration that the Morrow Agreement was terminated in 1994, rendering it and any rights thereunder incapable of assignment.

## Count III
## DECLARATORY RELIEF
### Declaration That Super Wings Acquired No Rights In The WINGS Trademark Or Otherwise As A Result Of The SW Assignment Agreement And Had No Rights To Rescind Pursuant To The Rescission Agreement
### (As Against Super Wings)

58. Plaintiff realleges and incorporates the allegations of paragraphs 1-57 above, as if set forth fully herein.

59. By entering into the SW Assignment Agreement, and representing its willingness to assert rights allegedly superior to those of L&L in and to the WINGS trademark, Super Wings has claimed rights in and to the WINGS trademark adverse to and in conflict with those of L&L.

60. As a result, an actual controversy exists between L&L and Super Wings as to rights relating to the WINGS trademark.

61. The foregoing actual controversy continues notwithstanding the Rescission Agreement in light of Super Wings' complicity with Beach Mart, and the control over Super Wings by Beach Mart.

62. To clarify and settle the foregoing adverse legal interests between L&L and Super Wings, L&L seeks a declaration that Super Wings acquired no rights to the WINGS name and no causes of action or claims against L&L as the result of the SW Assignment Agreement, that the SW Assignment Agreement is null and void and of no force or effect, and that the Rescission Agreement is null and void and of no force or effect.

A/76006065.1

## Count IV
## DECLARATORY RELIEF
### Declaration That Beach Mart Acquired No Rights In The WINGS Trademark Or Otherwise As A Result Of The BM Assignment Agreement
### (As Against Beach Mart)

63.     Plaintiff realleges and incorporates the allegations of paragraphs 1-62 above, as if set forth fully herein.

64.     By entering into the BM Assignment Agreement, and by its current assertion of claims against L&L, Beach Mart has claimed rights in and to the WINGS trademark adverse to and in conflict with those of L&L.

65.     As a result, an actual controversy exists between L&L and Beach Mart as to rights relating to the WINGS trademark.

66.     To clarify and settle the foregoing adverse legal interests between L&L and Beach Mart, L&L seeks a declaration that Beach Mart acquired no rights to the WINGS name and no causes of action or claims against L&L as the result of the BM Assignment Agreement, and that the BM Assignment Agreement is null and void and of no force or effect.

67.     In the alternative, to the extent the Court finds that Beach Mart acquired rights in and to the WINGS trademark by virtue of the BM Assignment Agreement, and that the BM Assignment Agreement is in force and effect, L&L seeks a declaratory judgment that L&L is entitled to have assigned to it by Beach Mart its rights, title and interests in the WINGS trademark pursuant to paragraph 7 of the Morrow Agreement.

## Count V
## DECLARATORY RELIEF
### Declaration That L&L Is The Owner Of The WINGS Name In Connection With Retail Stores, Beachwear And Beach-Related Products
### (Against All Defendants)

68.     Plaintiff realleges and incorporates the allegations of paragraphs 1-67 above, as if set forth fully herein.

69.     As a result of their actions, defendants have each and in concert created an actual controversy between them and L&L regarding ownership of the WINGS trademark.

16

A/76006065.1

70.     To clarify and settle the foregoing adverse legal interests among the parties hereto, L&L seeks a declaration that it is the sole and exclusive owner of all rights in and to the WINGS trademark for use in connection with retail stores, beachwear and beach related products.

**Count VI**
**BREACH OF CONTRACT**
**(As Against Morrow)**
**(In the alternative)**

71.     Plaintiff realleges and incorporates the allegations of paragraphs 1-70 above, as if set forth fully herein.

72.     To the extent that the Morrow Agreement remains a valid and binding contract, Morrow has breached its terms by failing to assign all right, title and interest to the WINGS trademark under the Morrow Agreement to L&L as required by paragraph 7 of the Morrow Agreement for the specified consideration, and instead purporting to assign such right, title and interest to Super Wings and later to Beach Mart by the SW and BM Assignment Agreements.

73.     To the extent the Morrow Agreement remains a valid and binding contract, Morrow has breached its terms by entering into the SW Assignment Agreement and the BM Assignment Agreement without providing the written notice to L&L as required by paragraph 9 of the Morrow Agreement.

74.     Morrow's material breaches of the Morrow Agreement proximately caused injury to L&L by violating L&L's rights in and to the WINGS trademark.

75.     As a direct and proximate cause of his breaches of the Morrow Agreement, to the extent it exists, Morrow has caused and will cause L&L monetary damages in an amount to be proven at trial, but which in all events is in excess of $500,000.

A/76006065.1

**Count VII**
**BREACH OF THE COVENANT OF GOOD FAITH**
**AND FAIR DEALING**
**(As Against Morrow)**
**(In the alternative)**

76.    Plaintiff realleges and incorporates the allegations of paragraphs 1-75 above, as if set forth fully herein.

77.    To the extent the Morrow Agreement remains a valid and binding contract, Morrow has breached the covenant of good faith and fair dealing implied therein by depriving L&L of the benefit arising under the Morrow Agreement.  Morrow's lack of any notice of the SW Assignment Agreement, and his unreasonable and inadequate notice of the BM Assignment Agreement, deprived L&L of the opportunity to obtain the benefits afforded it under paragraph 7 of the Morrow Agreement, which required Morrow to assign his rights under the Morrow Agreement to L&L in circumstances that have now been satisfied.

78.    To the extent the Morrow Agreement continues to be valid and exist, or to the extent either Super Wings or Beach Mart took any assignment to the rights thereof, L&L stands ready, willing and able to receive the benefits to which it is entitled under paragraph 7 of the Morrow Agreement for the consideration specified in paragraph 7.

79.    Morrow's breach of the covenant of good faith and fair dealing proximately caused injury to L&L by depriving L&L of its bargained-for rights under the Morrow Agreement, to the extent it exists, to have all rights, title and interests to the WINGS trademark under that Agreement assigned to L&L upon full payment of the Royalty, as defined therein.

80.    As a direct and proximate cause of his breach of the covenant of good faith and fair dealing, Morrow has caused and will cause L&L monetary damages in an amount to be proven at trial, but which in all events is in excess of $500,000.

A/76006065.1

### Count VIII
### TORTIOUS INTERFERENCE WITH CONTRACT
#### (As Against Super Wings And Beach Mart)
#### (In the alternative)

81.    Plaintiff realleges and incorporates the allegations of paragraphs 1-80 above, as if set forth fully herein.

82.    Super Wings and Beach Mart had full knowledge of the Morrow Agreement and the terms thereof prior to executing the SW Assignment Agreement and the BM Assignment Agreement, respectively, including such terms relating to Morrow's obligation to give written notice to L&L of any assignment of rights under the Morrow Agreement, and to assign such rights to L&L.

83.    Notwithstanding such knowledge, to further the interests of Beach Mart as a competitor to L&L, and in connection with the North Carolina Action, Super Wings and Beach Mart deliberately and intentionally caused and induced Morrow to execute the SW Assignment Agreement and subsequently the BM Assignment Agreement, and thereby materially breach his obligations to L&L under the Morrow Agreement, to the extent it remains in force and effect.

84.    Super Wings' and Beach Mart's deliberate and intentional conduct to procure Morrow's material breaches of the Morrow Agreement was for the purpose of improperly causing injury to L&L for the benefit of Beach Mart.

85.    Morrow would not have breached the Morrow Agreement but for the unlawful conduct of Super Wings and Beach Mart.

86.    Super Wings' and Beach Mart's unlawful conduct has interfered with and undermined L&L's rights under the Morrow Agreement, to the extent it exists, and has caused L&L injury.

87.    As a direct and proximate cause of the tortious conduct of Super Wings and Beach Mart, L&L has suffered monetary damages in an amount to be proven at trial, but which in all events is in excess of $500,000.

A/76006065.1

**Count IX**
**CIVIL CONSPIRACY TO TORTIOUSLY INTERFERE WITH**
**CONTRACT**
**(As Against Super Wings And Beach Mart)**
**(In the alternative)**

88.     Plaintiff realleges and incorporates the allegations of paragraphs 1-87 above, as if set forth fully herein.

89.     Super Wings and Beach Mart knowingly acted in concert for the purpose of inducing Morrow to breach the Morrow Agreement in order to unlawfully interfere with L&L's rights in the WINGS name for the benefit of Beach Mart.

90.     Super Wings and Beach Mart committed overt acts in furtherance of their plan and agreement to interfere with L&L's rights in the WINGS name, including forming Super Wings for the purpose of damaging L&L for the benefit of Beach Mart, and executing and rescinding (through the Rescission Agreement) the SW Assignment Agreement, and executing the BM Assignment Agreement.

91.     Super Wings' and Beach Mart's conspiracy to tortiously interfere with L&L's rights with respect to the Morrow Agreement has caused injury to L&L.

92.     As a direct and proximate result of Super Wings' and Beach Mart's conspiracy to tortiously interfere with respect to the Morrow Agreement, L&L has suffered monetary damages in an amount to be proven at trial, but which in all events is in excess of $500,000.

WHEREFORE, L&L respectfully seeks judgment as follows:

(a)     Pursuant to 28 U.S.C. § 2201, a declaration that Morrow never did and does not own any rights in or to the WINGS name and that the Morrow Agreement was null and void at its inception in April 1993;

(b)     Pursuant to 28 U.S.C. § 2201, a declaration that the Morrow Agreement was terminated in 1994;

(c)     Pursuant to 28 U.S.C. § 2201, a declaration that Super Wings and Beach Mart have acquired no rights in the WINGS name or otherwise as a result of the SW and BM Assignment Agreements;

A/76006065.1

     (d)     Pursuant to 28 U.S.C. § 2201, a declaration that L&L is the sole and exclusive owner of the trademark WINGS for use in connection with retail stores, beachwear and beach related products;

     (e)     That Morrow, Super Wings and Beach Mart, including their subsidiaries, affiliates, employees, assignees, and all others acting directly or indirectly in concert with each and all of them, be provisionally and permanently enjoined from enforcing the SW Assignment Agreement and/or the BM Assignment, or any terms thereof, and from using or allowing others to use the WINGS trademark, whether alone or in association with any other word or words, in connection with any retail establishment or operation and/or in connection with beachwear or beach related goods;

     (f)     That Morrow, Super Wings and Beach Mart, including their subsidiaries, affiliates, employees, assignees, and all others acting directly or indirectly in concert with each and all of them, be provisionally and permanently enjoined from asserting any rights in or to the WINGS name, whether alone or in association with any other word or words, in connection with any retail establishment or operation and/or in connection with beachwear or beach related goods;

     (g)     In the alternative, that damages be awarded against Morrow for breach of contract in an amount to be determined at trial, but in all events in an amount in excess of $500,000, plus costs and interest, and that Morrow be directed to assign all rights, title and interests in and to the WINGS trademark that he may possess to L&L;

     (h)     In the alternative, that damages be awarded against Morrow for breach of the implied covenant of good faith and fair dealing in an amount to be determined at trial, but in all events in an amount in excess of $500,000, plus costs and interest, and that Morrow be directed to assign all rights, title and interests in and to the WINGS trademark that he may possess to L&L;

     (i)     In the alternative, that damages be awarded against Super Wings and Beach Mart for tortious interference with contract, in an amount to be determined at trial, but in all events in

A/76006065.1

an amount in excess of $500,000, plus costs and interest, and that Beach Mart be directed to assign all rights, title and interests in and to the WINGS trademark that it may possess to L&L;

(j)     In the alternative, that damages be awarded against Super Wings and Beach Mart for conspiracy to tortiously interfere with contract, in an amount to be determined at trial, but in all events in an amount in excess of $500,000, plus costs and interest, and that Beach Mart be directed to assign all rights, title and interests in and to the WINGS trademark that it may possess to L&L; and

(k)     That such other and further relief be awarded to L&L that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, L&L demands trial by jury in this action of all issues so triable.


Dated: New York, New York                   BINGHAM MCCUTCHEN LLP
       April 30, 2014


By: s/ Richard S. Taffet
     Richard S. Taffet
     richard.taffet@bingham.com
     Diane C. Hertz
     diane.hertz@bingham.com
     399 Park Avenue
     New York, New York  10022-4689
     212.705.7000

     *Attorneys for Plaintiff L&L Wings, Inc.*

A/76006065.1